WILLIAM B. CAMPION, PLAINTIFF IN ERROR, AND CITY OF ELIZABETH, DEFENDANT IN ERROR.

1. A municipal council cannot set aside an assessment for benefits which has been paid, unless by special statutory authority.
2. Money paid on such assessment cannot be recovered so long as the assessment is unrevoked by competent authority.

---

On error to the Supreme Court.

Suit by Campion against the city to recover the amount of an assessment for paving paid by him. The assessment had been made in 1871; it was paid on July 1st, 1873; on May 7th, 1877, the assessment was set aside at the instance of the city, and on November 19th, 1877, a new assessment was made, that imposed on the lands which the plaintiff had owned an amount in excess of the sum he had paid.

Tried without a jury at January Term, 1879, of Union Circuit, by consent of counsel of the respective parties, and the judgment was in favor of the defendant.

The following reasons were assigned for the judgment by VAN SYCKEL, J.:

"An assessment was made under that clause of the charter of the city of Elizabeth, which was declared in *Bogert* v. *City of Elizabeth*, 12 *C. E. Green* 568, to be unconstitutional.

" The assessment was ratified February 16th, 1872. July 1st, 1873, Campion paid the city the sum of $2382.64, being a part of the amount which had been assessed against his lot.

" May 7th, 1877, his assessment was vacated and set aside by the city council, as a step preparatory to the making of a new assessment in its place, under the legislation hereafter referred to. On the 19th of November, the proceedings for the re-assessment were perfected, and resulted in laying upon the Campion lot a burden of $2999.05.

" Prior to this re-assessment the lot of Campion was conveyed by a judicial sale on foreclosure to Charles E. Hunter, the present owner thereof.

" The mortgage foreclosed was executed by Campion on the 24th day of April, A. D. 1873.

" By the thirteenth section of the supplement to the city charter, passed March 17th, 1870, the city council had power to reinstate proceedings in assessment cases, from the point where informality commences, whenever they discover that an error has occurred which would render their proceedings liable to be set aside, and to take new proceedings from that point. Under this section the new assessment was made in 1877, for $2999.05.

" March 17th, 1875, a further supplement was passed to the city charter, the fifth section of which (*Pamph. L.*, 1875, *p.* 291,) provides :

" ' That any person who has heretofore paid or who shall hereafter pay any assessment, shall, in case such assessment shall be set aside, altered or reduced in amount by any court of this state, or any other lawful authority, be entitled to the same relief as if he, she or they had not so paid, and in case any such person shall have made payments on account of such assessment, exceeding the amount adjudged to be justly due on such assessment, it shall be lawful for such person to claim and receive such excess from the city, with interest from the time of payment.'

" The plaintiff having paid the assessment of 1871, could not have recovered it back until that assessment was set aside.

This I understand to be the rule laid down in *Hill* v. *City of Elizabeth*, 10 *Vroom* 555.

"Having paid the assessment voluntarily, he had the advantage of being shielded from the imposition of any new or further assessment for the same work while the original assessment subsisted. See *Edwards* v. *Jersey City, Court of Errors, March Term*, 1878.

"Being in the enjoyment of the benefits which resulted to his property by reason of the improvement, and the money having been paid voluntarily, and accepted by the city, he would not have been permitted to gain an undue advantage to himself by recovering it back before the city was put in a position to make a re-assessment, by procuring the first assessment to be set aside.

"The proceedings taken under the act of 1870 must be taken as a unit, resulting in the substitution of the new assessment for the old one. The new assessment took the place of the old one, and the plaintiff, by the act of 1875, is limited in his recovery to the sum he had paid in excess of the new assessment.

"When the new assessment was made, the act of 1875 was in force; so far as the proceedings under the act of March 17th, 1870, had the effect to vacate and set aside the old assessment, they did so subject to the provision in the fifth section of the act of 1875.

"The setting aside of the old assessment, and the making of the new, were concurrent acts, or, more properly speaking, it was one act, and therefore the plaintiff never had, as he contends, the right to recover the entire sum he had paid, and he is not deprived of any vested right by the act of 1875.

"It may be said that prior to the statute of 1875, the plaintiff had a right to take proceedings to vacate the unlawful imposition, and that as a legal sequence, he would have been invested with the right to sue for the recovery of the whole sum paid, and that of this right to regain the sum so paid, he was deprived by legislation. The answer is, that according to the established doctrine in this state, it was competent for the

lawmakers to authorize the improvement to the plaintiff's lands by the municipality, and that the owner might be coerced by then existing, or by subsequent legislation, to pay for the benefits imparted to such lands by the work done by the public corporation.

"While prior to 1875 the plaintiff might have instituted proceedings to set aside the entire assessment, and thus have placed himself in a position to sue for the sum paid by him, the power at the same time was lodged in the legislature to compel him to pay for what the city had put upon his land, for the value of the improvement which he had appropriated. This right of the plaintiff, and the power of the legislature, were co-existent and concurrent, so that by the assertion of the latter nothing was taken from the plaintiff: the city took its own in a substituted form.

"*Ex æquo et bono*, all the plaintiff should recover is the excess paid.

"This result seems to accord with public policy and the provisions of the charter. The purpose of the act of 1870 was to enable the city to correct any error in an assessment which would invalidate it, and the act of 1875 very properly limited the recovery by the land owner to the sum paid by him in excess of the just burden.

"By the improvement the city had imparted a benefit to the land assessed, before the original assessment was made, and there would appear to be inequity in permitting the land owner to appropriate to his own advantage the benefits accruing to his land, as he did through the foreclosure sale to pay his liabilities, and at the same time to cast the expense of the work upon the present owner of the land.

"Where the assessment had not been paid the purchaser would buy it in consequence of the encumbrance at a reduced price, and thus the purchaser, and not the former owner, would have the benefit of the public improvement. The conclusion to which I have come promotes substantial justice.

"It is unnecessary to consider the act of February 27th, 1877, relied upon by the defence.

"It is conceded by the plaintiff that if my view of the law is correct, he is not entitled to recover any part of the sum paid.

"I find for the defendant."

A writ of error was brought to remove the judgment and proceedings to this court.

For the plaintiff in error, *W. J. Magie.*

For the defendant in error, *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The plaintiff seeks to recover in this suit certain moneys paid by him in part satisfaction of an assessment made for benefits from the paving of a street in front of a lot of land purchased by him. The right to sustain the action is placed upon two grounds, the first of which is that the assessment thus paid was absolutely void from the beginning, inasmuch as it was made by force of that certain provision of the charter of this city which was condemned by this court as invalid in the case of *Bogert* v. *City of Elizabeth,* 12 *C. E. Green* 568. But it is manifest that this position is untenable, as it has already been decided by this court, at the present term, in the suit of Davenport *v.* City of Elizabeth, that money paid on an assessment of this nature cannot be recovered so long as such assessment remains unexpunged by some competent authority.

Consequently the plaintiff's case must rest solely on the second ground assigned for its support, which is that the authorities of the city rescinded this assessment, and that thereby a right to claim by action the money paid became vested in the plaintiff.

From the state of the case it appears that the assessment in question was laid on February 16th, 1872; that the plaintiff made his payment upon it on July 1st, 1873, and that on May 7th, 1877, the assessment " was vacated and set aside by resolution of the common council of the city of Elizabeth, and

afterwards, on November 19th, 1877, a new assessment of the costs and expenses of said improvement was ratified, and a new assessment made against said lot, amounting " to more than the sum paid and now sued for by the plaintiff.

By a supplement to the charter of the city of Elizabeth, passed on March 17th, 1870, provision is made for making re-assessments in cases when the original assessment is vitiated " by reason of any illegality or informality " in the proceedings, and it is accordingly declared " that whenever the city council shall discover that any such proceedings are liable to be set aside by judicial authority, they may re-institute said proceedings from the point where such informality or illegality commences." And by a still further supplement, passed March 17th, 1875, a person who has paid an assessment which is afterwards set aside, and when a re-assessment has been substituted, is empowered, if such payment shall have exceeded the sum imposed upon him by the re-assessment, to " claim and receive from the city such excess, with interest from the time of payment."

At the trial the view taken by the circuit judge was that this setting aside of the original assessment on May 7th, 1877, and the re-assessment on the 19th of the following November, constituted but a single procedure, and that such procedure being justified by the supplementary act of March 17th, 1870, the consequence was the plaintiff's claim was exploded, as the sum paid by him was not in excess of the amount finally laid upon the land. The theory adopted was this, that although the act of the common council in abrogating the assessment, and their act in making a new one, were separated in point of time; still, such two acts, by intendment of law, were but parts of the same transaction, and were possessed of the same legal force as though they had been simultaneous. It is further maintained that these acts authorized and gave validity to the proceedings in question. This hypothesis is confronted by the counsel of the plaintiff in error—first, by a negation of the fact that the abolition of the tax and the re-assessment are but a single matter; and, second, by the contention that the

Campion v. City of Elizabeth.

act of 1870, on which the assessment is founded, does not apply to such a case as the present one, in which there is not irregularity merely in the proceedings, but a total want of power in the city to lay the original assessment.

If either of these positions be conceded, it appears to me to be plain that such concession is fatal to the claim in suit, for if the rescission of the original assessment be not part of the statutory re-assessment, or if the act itself be inapplicable to the present case, it inevitably results that the original assessment has never been legally abrogated, but is in full force at the present hour, an event utterly subversive of this action by force of the rule laid down in the above-cited case of Davenport v. City of Elizabeth. It is a *sine qua non* to the plaintiff's right to sue that the original assessment has been properly vacated, and it cannot be contended that the city council could rescind an assessment which has been consummated by payment, without some special authority to that end derived from legislation. · The consequence is that, regarding the act revoking this assessment as distinct from the proceeding to re-assess, such revocation is absolutely nugatory, as no such independent power is given to the municipal council, and on this ground the plaintiff's action must fail for want of a legal basis. The same result follows the conclusion that the statute in question is not applicable. The decision just referred to puts the plaintiff's case face to face with a true dilemma.

To avoid misconstruction I will, however, say that I do not agree to the contention that, under existing laws, the action of the common council of Elizabeth in making this re-assessment was not justifiable. The general act seems applicable if none of these special acts should be so considered. It is not intended, however, to construe any of these acts.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, DIXON, REED, SCUDDER, WOODHULL, DODD, GREEN. 10.

*For reversal*—None.